UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HUNTER, and all other similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>DOCTOR HAAS, AVERA, SANFORD HEALTH,<br><br>        Defendants. | 4:24-CV-04170-CCT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING** |

Plaintiff Micheal Hunter, who is pro se, commenced this action pursuant to 28 U.S.C. § 1361, and requests that this Court "issue writ of mandamus and/or writ of prohibition order compelling respondents confine requirements of the law[.]" Docket 1 at 1. Hunter submitted a document he labels as a "**SWORN AFFIDAVIT**" in support of his petition for a writ of mandamus, but the purported affidavit is not notarized and was not executed under penalty of perjury in accordance with 28 U.S.C. § 1746. Docket 5 (emphasis in original). Hunter moves for leaves to proceed in forma pauperis. Docket 2.

I.  **Motion to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in

forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). Hunter's "affidavit of poverty" demonstrates that he has insufficient funds to pay the filing fee. *See* Docket 2-1 (capitalization in original omitted). Thus, Hunter's motion for leave to proceed in forma pauperis, Docket 2, is granted.

## II.     1915 Screening

### A.     Factual Background

Hunter's initial pleading and purported "affidavit" are repetitive, confusing, and difficult to decipher. But because Hunter is proceeding pro se, the Court liberally construes his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). In addition, for purposes of this screening, the Court assumes that Hunter is diabetic, a Medicare recipient, and has a diabetes-related medical condition for which he has been prescribed pregabalin.[1] Hunter does not expressly allege these facts, but when his filings are considered in their entirety, it appears that his requests for relief are premised on these facts, which are not clearly and specifically alleged.

---

[1] Pregabalin is the generic name for Lyrica, a medication manufactured by Pfizer. Neuropathic pain associated with diabetic peripheral neuropathy is one of the indications for which Lyrica is approved. https://www.drugs.com/pro/lyrica.html (last visited Sept. 17, 2025).

Hunter contends that over 100,000 Americans died in 2023 due to diabetes and complications from diabetes. Docket 1 at 6–7. Many of these deaths occurred because impoverished Americans do not have access to the same healthcare as wealthy Americans. *Id.* at 7. Specialists, allegedly in violation of HIPAA [Health Insurance Portability and Accountability Act],[2] select patients based on "who has [the] best medical insurance[.]" *Id.* The manufacturer of a particular medication, pregabalin, has recommended a maximum dose because there is no evidence that a higher dose is effective. *Id.* But Hunter contends that a higher dose is effective and is not addictive. *Id.* Because Hunter is not a "drug addict," he contends that he should be prescribed a higher dose. *Id.* at 7, 9.

Hunter contends that defendants did not inform him of the consequences of not dieting or assign to him a dietician so that "he could [have] avoided the harms brought by the willful, callous deliberate indifference of unqualified persons[,]" including physician assistants undertreating to charge Medicare and Medicaid and physicians from Sudan and other countries. *Id.* at 9–10.

Hunter seems to contend that Sanford Health delayed his COVID vaccination because he criticized a physician as a "baby killer." *Id.* at 4. He alleges that Dr. Haas called a Sanford doctor "without written permission as required by laws." *Id.* at 2. Dr. Haas, according to Hunter, falsified prescriptions and used the falsified prescriptions to undertreat and harm him.

---

[2] The Court assumes that Hunter is referring to the HIPAA Privacy Rules, which set forth the standards for the use and disclosure of protected health information. *See* 45 C.F.R. Part 160 and Subparts A & E of Part 164.

3

*Id.* at 3. Dr. Haas also falsified Medicare records and overcharged for prescription drugs *Id.* at 14. On August 26, 2024, Dr. Haas denied Hunter access to a neurology specialist and misled Hunter about his qualifications. *Id.* at 12. Hunter contends that Dr. Haas is unqualified to treat patients suffering from diabetes and neuropathy and alleges that "[h]is gross incompetence caused death of a child during surgery." *Id.* at 4, 5. An unidentified Avera nurse, according to Hunter, lied about the maximum dose of pregabalin, adding to the duress caused by Haas's alleged incompetence. *Id.* at 5. Dr. Haas refused to refer Hunter to a neurologist and refuses to order "special shoes" covered by insurance that will make it easier for Hunter to walk. Docket 5 at 2.

Although Hunter does not name Mayo Clinic or Allina as defendants or respondents, he contends that these health systems have "formed together all neurologists in their jurisdictions" to deny Medicare recipients access to specialists. *Id.* at 4. He also contends that Mayo Clinic double bills Medicare and Medicaid. *Id.*

The United States, as well as Minnesota, North Dakota, and South Dakota have been the "victims of defrauding billions of dollars by the subtle agreement to over-charge and [require] unnecessary appointments[.]" *Id.* at 5. Although pregabalin is a "life-time" need, Avera physicians refuse to issue long-term prescriptions for this medication. *Id.* at 7. Instead, they schedule unnecessary check-ups and appointments to generate more patient billing. *Id.* Sanford providers refuse to prescribe a dose of pregabalin sufficient to enable

4

Hunter to walk. Docket 1 at 7. Because of his reports of healthcare fraud, Hunter seeks "Whistle Blower" protection. Docket 5 at 5.

Hunter alleges that federal law imposes "a duty to provide reasonably competent professional care and treatment[.]" Docket 1 at 3. According to Hunter, "Defendants have agreed to deprive [him] and others similarly situated purposely causing a deliberate shortage" of neurologists to increase profits. *Id.* at 13, 14.

Hunter does not seek damages. *Id.* at 15. Instead, he requests that the Court "[i]ssue a writ of mandamus which compels respondents to the requirements of the laws by providing the plaintiff specialists[,] all pr[e]scribed medications; issue a writ of prohibition which confines respondent[s] to requirements of federal laws[.]" *Id.* at 16. He also requests that the Court "[i]ssue sanctions in excess of fifteen million dollars[,]" and "[a]ppoint an attorney[.]" *Id.* Hunter requests that this Court bar Dr. Haas "for life from the medical practice to protect [the] public[.]" *Id.* at 5.

Hunter identifies various documents and other information he needs to support his claims. In his initial pleading, Hunter asserts that he needs the name of certain providers he alleges "violated his rights [to] entitlements under Title 42 Social Security Act" and retaliated against him for submitting "whistle blowing complaints" to federal and state law enforcement agencies. *Id.* at 2. According to Hunter, the "whistle blowing complaints" alleged violations of HIPAA and falsification of Medicare and Medicaid records. *Id.* Hunter contends that he needs a list of the victims who have "died because defendants prioritize

5

profit over life." *Id.* at 3. Hunter seeks all Medicare and Medicaid billing records to support his allegations of overcharging for prescription drugs. *Id.* Finally, Hunter requests "copies [of] all files in Sioux Falls South Dakota where Sanford has assisted an illegal immigrent [sic] to pratice [sic] as a nuerologist [sic]." *Id.* at 6. This alleged illegal immigrant has violated federal laws and should be deported. *Id.*

### B. Legal Standard

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657,

663–64 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting *Twombly*, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### C. Legal Analysis

#### 1. 28 U.S.C. § 1361

Hunter requests that the Court, pursuant to 28 U.S.C. § 1361, issue a "writ of mandamus and/or writ of prohibition . . . compelling respondents confine requirements of the law[.]" Docket 1 at 1. According to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." None of the respondents are officers or employees of the United States or any agency of the United States. *See generally* Docket 1. Rather, Hunter seeks a writ of mandamus against a private physician and two private health systems. *Id.* By its clear, plain terms the mandamus statute does not apply to an action seeking to compel a private individual or entity to perform a particular duty. *Syngenta Crop Prot., Inc. v. Drexel Chem. Co.*, 655 F. Supp. 2d 54, 62 (D.D.C. 2009) (holding that a federal district court does not have jurisdiction under 28 U.S.C. § 1361 to order a private entity to perform a duty or to act); *Carman v. Richardson*, 357 F. Supp. 1148, 1157 (D. Vt. 1973) (holding that § 1361 does not confer jurisdiction to compel a private hospital to perform any duty because § 1361 is a means to enforce a duty owed by a governmental official). Hunter's request for a writ of mandamus under 28 U.S.C. § 1361 is dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Medicare Act

Hunter contends that prescription drugs and timely access to specialists are entitlements under 42 U.S.C. § 1395. *Id.* at 10–11. Hunter urges the Court to "ensure [he] and others receives entitlements the law requires regardless of financial ability to pay[.]" *Id.* at 11. Because Hunter is a Medicare beneficiary, he appears to argue that this Court has jurisdiction to mandate that private healthcare providers provide medical care that Hunter believes is reasonable and necessary to treat his conditions. *See generally* Docket 1. The plain language of the Medicare Act demonstrates that this Court does not have subject-matter jurisdiction over Hunter's claim.

The Medicare Act provides insurance through the federal government for the cost of certain inpatient, outpatient, and other medical expenses, but expressly precludes reimbursement for "items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). The Secretary of Health and Human Services, according to the Medicare Act, has authority to determine what claims are covered by the Act in accordance with the regulations prescribed by him. *Id.* § 1395ff(a). While judicial review of claims arising under the Medicare Act is available, the Act expressly provides that such review is only available after the Secretary renders a "final decision" on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act. 42 U.S.C. § 1395ii. As the United States Supreme Court has explained, "[t]he third sentence of 42 U.S.C. § 405(h), made

applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), *to the exclusion of 28 U.S.C. § 1331*, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." *Heckler v. Ringer,* 466 U.S. 602, 614–15 (1984) (emphasis added) (footnote omitted); *see also Wright v. Sebelius,* 818 F. Supp. 2d 1153, 1158 (D. Neb. 2011) (recognizing that judicial review under the federal question statute, 28 U.S.C. § 1331, is precluded for claims arising under the Medicare Act).

    While a federal court at some point might have jurisdiction under 42 U.S.C. § 405(g) to review Hunter's claims alleging that he has not received Medicare benefits to which he is entitled, he must first present his claims to the Secretary and exhaust his administrative remedies before he can obtain judicial review of his claim. *Wright*, 818 F. Supp. 2d at 1158. Because Hunter does not allege that he has exhausted his administrative remedies as required by 42 U.S.C. § 405(g), the Court does not have subject-matter jurisdiction to consider Hunter's claim for benefits under the Medicare Act. Further, the United States Supreme Court has held that no writ of mandamus can properly issue regarding an entirely discretionary decision whether a particular medical service is "reasonable and necessary" and therefore reimbursable under the Medicare Act. *Heckler,* 466 U.S. at 616–17. For this reason, Hunter's request that the Court issue a writ of mandamus or otherwise hold that he is entitled to any benefits under the Medicare Act is dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. False Claims Act

The False Claims Act (FCA) prohibits any person from knowingly presenting a false or fraudulent claim for payment or approval by the federal government. 31 U.S.C. § 3729(a)(1). Because Hunter is proceeding pro se, he does not have standing to bring a *qui tam* action seeking to enforce the FCA. "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654. In an action seeking to enforce the FCA, the injury belongs to the United States, which is the real party in interest. *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 657 F. Supp. 2d 1039, 1059 (S.D. Iowa 2009) (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774–75 (2000)). Pro se, nonlawyers lack standing to prosecute *qui tam* actions seeking to enforce the FCA. *Id.* (collecting cases); *see also United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("Because relators lack a personal interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed *pro se*." (collecting cases)); *United States ex rel. Davis v. Hennepin Cnty.*, 15-cv-2671, 2016 WL 10747256, at *2 (D. Minn. July 8, 2016) (stating that "courts have uniformly held that non-lawyers may not litigate qui tam actions on behalf of the United States."). Thus, to the extent Hunter seeks to enforce the FCA, his claims are dismissed without prejudice for lack of standing.

Similarly, to the extent Hunter seeks to enforce the rights of any other persons under any state or federal law,[3] his claims are dismissed without prejudice because it is well established that pro se litigants may not bring claims on behalf of others. *Ward v. U.S. Marshals*, No. 5:23-CV-05061-CCT, 2025 WL 949242, at *15 (D.S.D. Mar. 28, 2025) ("Under 28 U.S.C. § 1654, a pro se plaintiff may plead their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others.") (citations omitted); *Weigel v. City of Flandreau*, No. 4:23-CV-04184-ECS, 2025 WL 487153, at *2 (D.S.D. Feb. 13, 2025) ("Only a licensed attorney can represent the interests of another person.") (collecting cases, including *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005)).

    **4.    State-law Medical Malpractice Claim**

Contrary to Hunter's allegation, federal law does not impose "duty to provide reasonably competent professional care and treatment[.]" Docket 1 at 3. But healthcare providers have a duty under state law to provide care and treatment that complies with the applicable standard of care. To establish a claim for medical malpractice under South Dakota law, Hunter must prove four elements: (1) a legal duty to act according to a recognized standard of care; (2)

---

[3] The caption of Hunter's initial pleading identifies "Michael Hunter and all others similarly situated" as plaintiffs. Docket 1 at 1 (capitalization in original omitted). "[I]t is well established that a self-represented litigant cannot represent the rights, claims, and interests of other parties in a class action lawsuit." *Wilson v. Precythe*, No. 4:23-CV-00869-NCC, 2023 WL 4531363, at *2 (E.D. Mo. July 13, 2023). Hunter also alleges that Dr. Haas's "gross incompetence caused [the] death of a child during surgery." Docket 1 at 4. Finally, Hunter asserts that Avera and Sanford Health are civilly and criminally liable for over 50,000 deaths from 2000 through 2023 from illnesses caused by diabetes. *Id.* at 13.

breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of the standard of care and the injury. *Schrader v. Tjarks*, 522 N.W.2d 205, 210 (S.D. 1994). Before the Court considers whether Hunter has alleged a viable state-law claim for medical malpractice, the Court must consider whether it has subject-matter jurisdiction over a state-law claim. *See Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (stating that district courts should "be attentive to a satisfaction of jurisdictional requirements in all cases." (citation omitted)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To invoke federal question jurisdiction under 28 U.S.C. § 1331, Hunter must plead a colorable claim arising under the Constitution or laws of the United States. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim arising under the Constitution or laws of the United States." (internal citation omitted)). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Liberally construing Hunter's allegations, he has not pleaded a viable claim arising under the Constitution or laws of the United States.

Because federal-question jurisdiction under 28 U.S.C. § 1331 is inapplicable, the Court must consider whether diversity jurisdiction exists

13

under 28 U.S.C. § 1332. Diversity jurisdiction exists when the parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). As the party seeking a federal forum, Hunter bears the burden of demonstrating that the parties are citizens of different states. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). Hunter mailed his initial pleading in an envelope with a South Dakota return address, Docket 1 at 20, and his purported affidavit includes a South Dakota address, Docket 5 at 1. But his pleadings do not contain any allegations regarding his citizenship or the citizenship of any of the named defendants. *See generally* Docket 1, Docket 5; *see also Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) ("When jurisdiction is based on diversity of citizenship, the pleadings, to establish diversity, must set forth with specificity the citizenship of the parties."(citation omitted)). Further, although Hunter identifies two corporate entities as defendants, his pleadings contain no allegations regarding the place of incorporation or the principal place of business of Avera or Sanford Health. *See* Docket 1. Hunter has not met his burden of establishing diversity jurisdiction. *Dale v. Weller*, 956 F.2d 813, 815 (8th Cir. 1992) ("Where the plaintiff fails to state the place of incorporation or the principal place of business of a corporate party, the pleadings are inadequate to establish diversity." (internal quotation omitted)); *Walker ex rel. Walker v. Norwest Corp.*,

14

108 F.3d 158, 161 (8th Cir. 1997) (stating that party asserting diversity jurisdiction bears the burden "to plead the citizenship of the parties"). For these reasons, any state law claims Hunter asserts are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).[4]

### III. Conclusion

Accordingly, it is ORDERED

1.  That Hunter's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.  That this action is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. R. 12(h).

DATED October 6, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

---

[4] As the Court noted, Hunter identifies various categories of documents and information he asserts he needs to support his claims. *See, e.g.*, Docket 1 at 3, 4, 6. Because the Court has dismissed all of Hunter's claims, Hunter is not permitted to conduct discovery, and this Court has no authority to direct that any individual or entity provide to Hunter any of the documents and information he asserts he needs.